Second case we have this morning is City of Decatur v. Dennis Ballinger. Attorney Morthland is here on behalf of the appellant and Attorney Robinson for the affilee. Mr. Morthland. May it please the court. Mr. Morthland. Mr. Robinson. I would like to take this opportunity to congratulate Justice White on her appointment. Thank you, Mr. Morthland. It's good to see you. It's wonderful to see you as well. Thank you. I represent Dennis Ballinger. We're here on two cases, both of which involve the City of Decatur and a complaint for demolition which was filed by them. The two properties are 1079 West Cerro Gordo and 803 East Lawrence Street. In each of those cases, Mr. Ballinger had sold those properties on contract for deal. The question that I'm here on, and I would love a public court opinion on, is under the demolition statute, who's the owner of the property in that Vendor Vendee situation? The demolition statute provides that the city or municipality may recover the cost of demolition from the owner or owners of the real estate. Well, normally that would be a fairly easy question to answer. But in our situation, who is the owner? Is it the contract seller or the contract buyer? We think that it's the contract buyer that, under the demolition statute, is the owner of the real estate. Now, there are several cases that have not dealt directly with this but have dealt with the situation of Vendor Vendee. And you have to apply what is known as a doctrine of equitable conversion. So, the first case I'd like to cite to the court is Life Savings and Loan Association v. Bryant. And I believe that's in my brief that I have submitted. In that case, the court dealt with the issue of equitable conversion. And the key point is that equitable conversion attaches at the time the contract for deed is signed. So, if I'm buying a house off of you, the moment that we sit down and I sign the agreement for deed, equitable conversion is applied. I am the owner of that property. What is the Vendor? Well, in this particular case and other cases which I will cite to the court, the Vendor is a mere title holder. A simple formality. He is holding title in trust and waiting for payment in full or in part. And then he releases the deed and relinquishes the position of title. In that Life Savings case, the Supreme Court said, equitable conversion is the treating of land as personality and personality as land under certain circumstances. Hence, as between the parties and those claiming through them, when the owner of the land enters into a valid and enforceable contract for its sale, he continues to hold legal title but in trust for the buyer. The buyer becomes the equitable owner and holds the purchase money in trust for the seller. The conversion takes place at the time of entering into the contract. That court went on to state that between Vendor and Vendee, equity regards the Vendee as the owner of the land upon execution of the purchase contract. The next case is People of the State of Illinois v. Chicago Title and Trust Company. Again, I cited that case in my brief. In that situation, they were looking at a land trust. You have the trustee who holds title to the land, and then you have the beneficiary of that land trust who is actually in control of the land. And again, that's important to note in Life Savings and Loan v. Bryant, the equitable conversion theory, the Vendee is the one that has control, use, and enjoyment of the land. And the same situation holds true under a land trust situation. In that case, they said the same thing, that the land trustee is simply holding title and that the beneficiary is the owner. Interesting to note in that case that the trust agreement was not recorded and thereby made a matter of record. The court basically just brushed that off and said, so, it's not important. Because I know there has been an issue raised in this case, that the agreement for deed or a memorandum of the agreement for deed was not recorded. And I quite frankly think that that is an irrelevant act. You can either record a memorandum or you can choose not to record a memorandum. The next case, which I would like to cite to the court, is the City of Chicago v. 934 Willow Building Corporation. Again, it was a situation, kind of a different situation, but the Vendee was not named in that proceeding to compel deconversion of a building. And the Vendee, ultimately the court said, wait a minute, the appellate court said, wait a minute, that Vendee was a necessary party to that proceeding. Because of equitable conversion, he was in effect the owner of that building. Next case I'd like to cite is Mason v. Rosewell. In that situation, they were dealing with, again, agreement for deed. There was an issue of whether or not the Vendee under an agreement for deed could be considered an owner and petitioned for funds under the indemnity fund. Well, this appellate court said, absolutely, the Vendee is the owner under that contract. And he is the one that may petition under the indemnity fund for reimbursement. We go on in the next case, same situation, IMM Acceptance Corporation v. First National Bank and Trust Company of Evanston. Again, a land trust situation. And that court held that, again, trustee simply holds mere title. And that the beneficiary is the one that has actual possession, control, use, and enjoyment of that property. Therefore, he is, in the eyes of the law, the owner of that real estate. Now, Judge Weber, in his written opinion, in the 0500 case, cited a Hinsdale Federal Savings and Loan Association v. Gary Wheaton Bank for the proposition that because my client, in the 0500 case, had filed a forcible entry and detainer, that meant that the Vendee was in breach of the agreement for deed. Therefore, equitable conversion does not apply. Well, I do disagree with that interpretation of the Hinsdale case. Although we did file a forcible entry and detainer action in the circuit court, we took a judgment, but we took a judgment for the unpaid balance of the contract price and did not take a judgment for possession, thereby placing ourselves back into possession of that property. Pursuant to that judgment, they still had ownership and possession of that real estate. We had a money judgment. Very analogous to a situation where I'm a bank and I've got a mortgage. The mortgagee is in default under the terms of the mortgage or not making payments. I, as the bank, have a couple of options. I can foreclose on that mortgage and regain possession of that real estate and sell it, or I can choose to sue them on the note and let them keep the real estate. Same situation as we have here. I took a judgment. I took a judgment for the money on the note. I did not regain possession of that property. It remains in, well, in the Abbott's in the one case, and then Tammy Mickle and Patricia Perry in the other case. But the Hinsdale case, that situation, the vendee was trying to cloak himself as, let me back up, the individual involved in that case tried to use the situation that he was a contract vendee to better himself, better his situation in that case. And the court said, we first conclude that the vendees are the equitable owners of the subject property. Generally, a contract buyer becomes the equitable owner of the property upon execution of the installment contract. The doctrine will not be applied if the contract of sale is not enforceable because of the condition proceeding, the occurrence of which is not governed by either party to the contract, is unfulfilled. Or, if the party who claims the benefit of the doctrine of equitable conversion is in breach of that contract through his own failure to perform, then equitable conversion does not apply. And Mr. Morphin, that brings me to my question. The fact that there was default here, doesn't that alter their rights? And so are you saying that since the equitable conversion does not occur because of the breach, your client has the right to choose whether or not to take title back or isn't it automatic that they no longer have that? I don't think it's automatic. He has the option, like a bank has the option, to foreclose on the mortgage, take possession, retake possession, or sue on the note. My client chose to sue on the note. Did you file a memorandum of judgment? Did I? Yes. No. Does my client ever? No. Maybe in a very, very limited situation he does. My client owns hundreds and hundreds of properties throughout the state of Illinois. He will prepare memorandums and give them to the contract buyers, and if they choose to pay the recording fee, that's fine. But you've got a situation where my client is a tax purchaser. He purchases certificates. He reduces some of those to deed. When he sells those properties, in most cases, his profit margin is razor thin. So he doesn't have the money to just make sure when he sells it to record a memorandum in every case because that shrinks his profit margin. So that's one of the reasons why he doesn't. You've cited a lot of cases, but is there any case, any authority that you can cite which would suggest the city couldn't turn to both the VIN door and VIN deed? Because of equitable conversion. If you think about it, this property was a distressed property. Well, I'm not sure that answers my question. Just because equitable conversion, that precludes the city from looking to the VIN door? The law says that under a VIN door, VIN deed situation. Is there a case that says that? No, that's what I was hoping that this court would say. That's why I'm here today. Okay. And that gets me back to my point. What I'm saying is if there's a default, doesn't it change the position of the parties? And that's why your client can go in and seek either to recover the cost, the balance, or in addition to that, recover the property. But just because your client doesn't seek to recover the property itself, does that change the fact that their positions have changed due to the default? And he now has that authority? Well, he has to do one or the other. He can't do both. The law prevents him from regaining possession and suing for the entire balance of his contract. I think it also prevents him from even suing to recover a part of the money owed. So, and I'm trying to answer the question, and I think Hinsdale Federal Savings and Loan, the application of that case by Judge Weber, may provide an answer to that. In that case, the quote that I cited to the court, it said, or if the party who claims the benefit of the doctrine is in breach of contract. Well, in this particular case, it was the vendee who was in breach of that installment contract. And he was trying to cloak himself under the theory of equitable conversion, saying, I am the contract vendee. I am the owner of that property. And that's why the court pointed that out. In our situation, Dennis Ballinger is the vendor. He was not in breach of that agreement in either case. So that's why I suggest that Hinsdale Federal has no application to our case. There are issues about the vendees in each of the cases being in breach, but not the vendor. In closing, I would like to, as I've said, that's why I am here. There is no case law interpreting the word owner under the demolition statute. And I think that these cases that have dealt with land trusts and other vendor-vendee situations in the indemnity fund, each one of them are consistent. They say the vendee is the owner. One other thing I wanted to point out. You know, this was a distressed property. And it became uninhabitable at some point in time. And the city filed a complaint to demolish both of these properties. Who was in possession of those properties at the time? Well, I think that it was the contract vendee, quote, owner, end quote. Thank you. Thank you. Thank you, Mr. Morthman. Mr. Robinson. Thank you, Justice Boakman. Please, the court. First of all, what's really at issue here is who are we going to require to reimburse the city, in this case of Decatur, for its cost to demolish a dangerous and unsafe structure. And what we're almost dealing with is a game of hot potato. These are properties that are sliding across the balance sheet from assets to liabilities. And it is that problem that the legislature sought to address in enacting Section 11-31-1, authorizing cities to seek to recover their costs of demolition from the owner or owners of these distressed properties. Justice Turner, I'd like to respond to a question that you posed to Appellant, and that is whether there's a case that says that this statute can be interpreted to allow the city to recover from both Vendor and Vendee. I also could not find a case directly on point, but I did find Chicago v. Mandeline, and that is a case where both Vendor and Vendee were tried for building code violations. And the court held that the Vendor, under a contract for deed, in that case was an owner liable for the building code violations. And that was even though the Vendee took exclusive possession and was not in default under the contract. The simple answer here is that the General Assembly intended to empower the courts with broad discretion to determine ownership and responsibility for reimbursement of demo expenses. And the cases that have been cited so far seem to all commence with almost an assumption. And the assumption is that the holder of the fee estate is an owner. And then the analysis proceeds to, well, who else also is seized of the necessary incidence of ownership to also be considered an owner? And so in a contract for deed situation, what you have is a situation that is entirely different from a land trust where the trustee has the appearance of ownership and that the trustee has legal title and may have the exclusive authority to take action with regard to a property, but has no authority to decide what action to take. That power, that piece of the bundle of rights that is property ownership, is reserved to the beneficial owners. And that's simply not the case with the situation of a contract for deed. Counsel, the case you cited earlier, was that Chicago v. Mundelein? That is Chicago versus Mandelein. Mandelein. I don't, did you cite that? I did not. Okay, do you have a citation? Yes, sir, I do. It's found at 26 Illinois Appellate 2nd, 480. And was opposing counsel aware that you might cite a new case today? I'm not sure that it was. I did not notify him. I'd like to hear some argument on the mechanics lien act, because I know you've mentioned that in your brief, and how that might affect the court's decision. Well, it's interesting that the demolition statute case law points to the mechanics lien act for an interpretation of owner. I think, however, that case is a case that arises before the changes in the demolition statute that really crystallized the municipality's authority to seek a money judgment up front against the owner or owners. I think as it began, and I'm not well versed in the history of the General Assembly's tinkering with this particular paragraph of the municipal code or section, but it appears to me that initially it was anticipated that municipalities would have a remedy by foreclosing their lien of demolition, which was given a great priority, I believe, to all except for tax liens. But I think that the General Assembly looked at that and decided that the value to the municipalities of recovering by executing on a parcel of ground that is now vacant because the municipality has had to demolish a dangerous and unsafe structure is not an adequate remedy. And so I think that there is, in addressing your question directly, under the mechanics lien act, it basically requires that before I can foreclose my mechanics lien and recover the costs of my services from the value of the property to which I added value, I have to give everybody notice. Because, in effect, what I'm doing is I'm defeating other secured creditors' rights to do the same. And so I think that as I reviewed this in preparing for this oral argument, I think I've strayed a little bit from my thinking as set forth in the brief regarding the mechanics lien act. But I will say that under the mechanics lien act, there are cases that hold that a possessor of a secured interest in a parcel of property to which a mechanics lien attaches is an owner. So I think there's an attempt to read it broadly. But again, I think the attempt to read it broadly in that context is an attempt to read broadly the notice requirement rather than this fairly specific provision in section 11-31-1 that authorizes municipalities to pursue a money judgment against the owner or owners. There are some other cases. We know from Arone v. City of Chicago that the holder of a naked vendor's lien where there has been a deed conveying the property is not an owner. But then we also know under the holding of Mason v. Rosewell that at least for the Revenue Act's indemnity fund for bona fide purchasers in good faith of properties at tax sales, the contract purchaser is considered an owner under that act. We also know that in annexation law, the contract purchaser has the same rights as an owner possessed of a fee interest. The court raised some concern with the doctrine of equitable conversion as applied in this case. In my thinking, the doctrine of equitable conversion as asserted by Ballenger is an attempt to obfuscate or cloud the issue. The doctrine of equitable conversion in the first instance is, and the cases all predicate their pronouncements on the fact that it is as between vendor and vendee. So you have to look at a special group of cases that deal with the doctrine of equitable conversion or the rights of vendor and vendee or the obligations of vendor and vendee as opposed to third parties. And while it may be appropriate in a case in equity to require that a contract vendee who has paid 90% of the contract value and has had possession for a lengthy period of time that he would be the exclusive owner to the exclusion of the vendor who now retains a lien against the value of the property for a small remaining portion of the purchase price, it is different at the other end of the timeline of the relationship. And I do want to point out that the demolition provisions of the municipal code don't require proof of causation of the dangerous and unsafe condition for a lot of reasons. So getting into the timing of who and when is really difficult and I don't think the General Assembly intended for the courts to go down that path. Both of the contract vendees in these consolidated appeals, or actually all three of them, the one, Mikkel and Perry, and the other, all four of them, the Abbots, there's no question they were in default of their agreements. And as a result, there's no question that the vendor under each of those contracts had not only his contractual rights to accelerate payments, to regain possession, or a mixture of the above, but also had common law rights of recovery against vendees, for example, for waste of the property. And the reason that this is so important is because when you say it quickly, you tend to mix up the separate pieces that are the bundle, that are parts of the bundle that constitutes property ownership, real property ownership. Possession is the right to the use and enjoyment of the property and title is a legal relationship to the property. There used to be a, the concept of season used to be more prevalent in property law than it is now. I still recall my first year property professor trying to explain season, but it is a concept that talks about not just possession and not just legal title, but a combination of them and it's kind of become, I think in the cases today, more a discussion of who has control over the property. And in that respect, I think an analysis of the contract at issue in both of these cases is extremely important. First of all, neither contract was terminated either in writing or by court order. So the contracts remain executory presumably to this day. And then also there is the issue of delivery and acceptance that I argued in my brief. Neither, in neither the Abbott's case or the case involving Perry and Mikkel, did Ballenger deliver the deed to the Vendees. And the significance of that is that there is case law for the proposition that a real estate transaction is not completed until there is delivery and acceptance of the deed. And I liken this to the old requirement of livery of season where the vendor had to go out to the ground and grab a handful and place it in the hand of the Vendee. Whether that's archaic or not, there has to be... One of the properties, correct? Ballenger recorded a quitclaim deed to the Abbott's. He did so after the Abbott's were already in default on the agreement. And the trial court made a finding on that, that it was an ineffective attempt to transfer the title of property. Is that right? The trial court reasoned that that was an ineffective gift or an incomplete gift. And wasn't there a disclaimer recorded as well? In the Abbott's, when they found out that the property was suddenly in their name, they recorded a disclaimer, yes, sir. And so, you know, to come in and say, well, you know, we filed forcible entry and detainer, but we left open the issue of possession, and the contract's still executory, so they have the right to possession. That's really not coming into equity, in my mind, with clean hands. And that is really... That's a situation where the equitable conversion is sort of being forced on the Vendees. You know, you entered into this contract, you made some payments, and now we're going to say that equitable conversion occurred when you signed the contract. And since... And so now you own it, even though you're in breach for failure to perform on the contract. I don't think you can really have it both ways. The contracts don't specify Vendee's rights to possession. There's a case law that would suggest that it is implied by the contract provision that says that in the event of default, the Vendor is entitled to resume possession. The contracts require or authorize casualty insurance claims to be paid to the Vendor if the Vendee fails to repair. They also authorize the Vendor to add costs of repair to the unpaid principal. They make it clear that title isn't going to vest. They're not going to get a deed until they have fully paid the purchase price, which I suppose is not unusual. But interestingly, they prohibit Vendees from encumbering the property without Ballenger's prior approval. And they also allow Ballenger to encumber the property without his Vendee's approval. This is a massive amount of control being retained in the Vendor that is indicative of a situation where the city rightfully went after the Vendor. And I should point out, it may appear from the record, but perhaps only by implication, there are situations where properties become derelict, where the problems are really more related to the failure of the entity in possession to take care of the property. Lack of garbage service or not picking up the yard or certain things allowing the property to grow into disrepair. However, when you're talking about the demolition of a piece of property, how can you not include the record owner as someone responsible for it? Because we're talking about basically destroying a piece of property. It could be serving as collateral on a note. It presumably is entitled to some consideration or the Vendor has considered it as an asset. And so it is significant to hold the Vendor responsible for the care of the property, particularly in these end stages. In summary, I'd simply like to say that this is a situation where the case is not being decided on the pleadings. The case is being decided on summary. The cases are being decided in one instance on summary judgment and another instance of a motion to establish responsibility for the city's demolition costs. And at that stage in the process, the Ballenger is required to put up or show up or shut up. The city does not dispute that on the pleadings there are material issues of disputed fact joined. But once you proceed to the next level and you go to the proofs, what you have is proofs in favor of the city and a lack of proofs in favor of Ballenger. And I urge that the Court so find. Thank you. Thank you, Mr. Robinson. Mr. Morthland? Thank you. Mr. Morthland, Mr. Robinson cited a case that wasn't contained in his brief. Are you familiar with the case? No, I am not. Would you like some time to respond in writing after you've had a chance to read the case? I would. How much time do you think you'll need? Fourteen days. Fine by me. Okay, thank you. All right, so we'll mark this for 14 days then. And if you don't plan to respond and you know that after you read the case, that's fine too. You can let us know. I will. Okay, thanks. Thank you. Just a couple of comments I wanted to make. Justice Turner, you had mentioned something about any cases directly on point, and I don't believe there are any directly on point. The City of Chicago v. 934 Willow Building Corporation dealt with an ordinance violation. In that particular case, the municipality sued the Vendor under a valid agreement for deed. That appellate court and the Vendor lost, went on appeal. The appellate court at one section of the opinion stated, It is undisputed that Willow Bissell was in possession and control. Such a party is liable for the violation of the ordinance. And I think that has application to our situation. Mortgages, the language in the contract for deed that Mr. Robinson was pointing out, you also find a lot of that language in mortgages. I had previously mentioned the relationship of mortgageor and mortgagee and vendor and vendee in my earlier argument. What you've got is a situation where under the demolition statute, the municipalities will join the mortgagee, but they will not take a judgment for the costs against the bank. You see this all over the state of Illinois now. A bank will file a complaint to foreclose. They will serve everybody. They will take a judgment of foreclosure. They will actually go as far as setting a sale date and then they'll continue that sale date and they'll continue it again. And then finally it will just be continued in further order and remain in limbo for years and years and years. They don't want to take possession of these properties because they know that the municipalities are ready to pounce on them to make what the municipalities deem are needed repairs. The owners have long since moved out. The vendees have long since moved out. Banks don't want to take possession and be responsible for that. One last thing. Mr. Robinson had mentioned the delivery of the deed, the delivery of season. And I think in his brief he might have cited a Kirby versus Kirby case where it was a situation where a husband and wife deeded a piece of property to husband's brother unbeknownst to the husband. He didn't know anything about it. And that case talked about, you know, you have to offer an acceptance and that didn't apply in that particular case. In each of these two cases we have a vendor or vendee who sit down and they sign a contract and that vendee knows or hopes that at some point in time he is going to receive a deed to that property. So that's unlike Kirby where there was no agreement. That was just a, let's record the deed and get it in his name. Well, that's not the case. That's not in our case. Thank you. Thank you, Mr. Martin. This court will take this matter under advisement and will be in recess until the next case.